504 So.2d 900 (1987)
LOUISIANA LIFE, LTD.
v.
Shirley McNAMARA, Secretary of Department of Revenue and Taxation, State of Louisiana.
No. CA 85 1568.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
*902 Marguerite K. Kingsmill, Joseph W. Looney, New Orleans, for plaintiff-appellant Louisiana Life, Ltd.
Marlon V. Harrison, Baton Rouge, for defendant-appellee Shirley McNamara, Secretary of the Dept. of Revenue and Taxation, State of Louisiana.
David Minton, Washington, D.C., amicus curiae Magazine Publishers Assoc.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
GROVER L. COVINGTON, Chief Judge.
This is a suit brought by a taxpayer, Louisiana Life, Ltd. against Shirley McNamara, Secretary of Department of Revenue and Taxation, State of Louisiana, to recover amounts paid under protest as sales tax for a certain tax period. The taxpayer is engaged in the business of publishing and selling the magazine Louisiana Life Magazine of the Bayou State, published bi-monthly, which provides news stories, opinions and items of general interest on a variety of subjects for readership consisting primarily of the citizenry of Louisiana. The magazine is sold by subscription and at newsstands.
Basically, the taxpayer's position is that the statute imposing a sales tax on it, coupled with the exemption set forth in La. R.S. 47:305D.(1)(e)[1] excluding newspapers but not other periodic publications serving the same purpose, constitutes an impermissible prohibition or restraint of the free exercise of the right of freedom of speech and press guaranteed by the First and Fourteenth Amendments of the Constitution of the United States and Article I, Section 7 of the Louisiana Constitution of 1974.
In essence, it is the taxpayer's contention that because the Louisiana sales tax taxes the retail sale of magazines but not newspapers, both of which are protected equally by the Constitution, it is unconstitutional.
We agree with the taxpayer's contention, and reverse the judgment. An exemption which exempts some publications but not all publications constitutes an infringement of First and Fourteenth Amendment rights. A magazine is a periodic publication, as is a newspaper; and may even be a section of a newspaper; though it may be printed on a different quality paper and be circulated less frequently.
The First Amendment to the Constitution of the United States states:

*903 Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. (Emphasis added.)
The Fourteenth Amendment to the Constitution, in pertinent part, states:
No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
Article I, Section 7 of the Louisiana Constitution of 1974 states:
No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom.
Under these three provisions, freedom of speech or of the press is a fundamental right, which may not be abridged or limited unless in furtherance of a compelling state interest. Godwin v. East Baton Rouge Parish School Board, 403 So.2d 72 (La.App. 1st Cir.1981), affirmed, 408 So.2d 1214 (La.1982). A tax that burdens rights protected by the First Amendment of the Constitution of the United States cannot stand unless the burden is necessary to achieve an overriding governmental interest. Minneapolis Star and Tribune Company v. Minnesota Commissioner of Revenue, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983).
Printed speech in whatever form is protected equally under the First and Fourteenth Amendments, whether it is the "humble leaflet" of an individual or the glossy magazine of the "modern corporate conglomerate." See First National Bank of Boston v. Bellotti, 435 U.S. 765, 802, 98 S.Ct. 1407, 1429, 55 L.Ed.2d 707 (1978). Chief Justice Hughes, half a century ago, in Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); explained the meaning of the Constitution in this regard:
Freedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action.... The liberty of the press is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets.... The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion. (303 U.S. at 450, 452, 58 S.Ct. at 668, 669)
No one particular form of "protected" speech is entitled to or may be accorded a greater or lesser degree of protection than another. The printed matter forbidden by city ordinance in Lovell v. City of Griffin, supra, was a pamphlet; New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), involved the First Amendment rights of a major daily newspaper to run an advertisement without prior ascertainment of its accuracy. In Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960) and Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971), the materials protected by the First Amendment were leaflets. The variation in the form of speech in the cited cases made no difference in the equality of protection to which they were entitled under the First and Fourteenth Amendments of the Constitution of the United States; the governmental infringement of any form of speech was found to be unconstitutional.
The scope of First Amendment protection was described in First National Bank of Boston v. Bellotti, supra, where the Court struck down a Massachusetts statute which prohibited certain corporations from expressing their views on public issues:
Because the First Amendment was meant to guarantee freedom to express and communicate ideas, I can see no difference between the right of those who *904 seek to disseminate ideas by way of a newspaper and those who give lectures or speeches and seek to enlarge the audience by publication and wide dissemination... In short, the First Amendment does not "belong" to any definable category of persons or entities: It belongs to all who exercise its freedoms. 435 U.S. at 802, 98 S.Ct. at 1429.
In Niemotko v. Maryland, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951), the Court reversed the conviction of two members of Jehovah's Witness who were denied permission to use a city park for "Bible talks" even though other persons had been allowed to use the park for religious purposes. In Police Department of the City of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), the Court declared unconstitutional a Chicago city ordinance prohibiting picketing near schools, except picketing in labor disputes. The Court said:
There is an `equality of status in the field of ideas,' and government must afford all points of view an equal opportunity to be heard. Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say. 408 U.S. at 96, 92 S.Ct. at 2290.
Differential taxation of the press has been previously considered by the United States Supreme Court. In Grosjean v. American Press Company, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936), the Court dealt with a two percent gross receipts tax in Louisiana which was applicable to any publication selling advertising and having a circulation of more than 20,000 copies weekly. In application, the tax affected only 13 of Louisiana's 137 newspapers at that time. In striking down the tax as a denial of liberties secured by the First and Fourteenth Amendments, the Court said:
[T]he object of the constitutional provisions was to prevent previous restraints on publication; and the court was careful not to limit the protection of the right to any particular way of abridging it. Liberty of the press within the meaning of the constitutional provision, it was broadly said, meant `principally although not exclusively, immunity from previous restraints or [from] censorship.'... `The evils to be prevented were not the censorship of the press merely, but any action of the government by means of which it might prevent such free and general discussion of public matters as seems absolutely essential to prepare the people for an intelligent exercise of their rights as citizens.' 297 U.S. at 249, 250, 56 S.Ct. at 449.
The Court's reading of the First Amendment, "any action of the government by means of which it might prevent such free and general discussion of public matters," referred to the tax, which applied to some, but not all, publications. Thus, the tax was unconstitutional.
The Supreme Court, in Minneapolis Star, had at issue a state tax on publications that used more than $100,000 worth of paper and ink each year. Again, when faced with a "differential tax" upon the press, the Court struck down the tax as unconstitutional, "not only because it singles out the press, but also because it targets a small group of newspapers." 460 U.S. at 591, 103 S.Ct. at 1375.
At the time of the Minneapolis Star case, the State of Minnesota exempted newspapers from its general sales tax. However, the Minnesota legislature imposed a use tax, on the cost of paper and ink products. The first $100,000 worth of ink and paper consumed by any publication in a calendar year was exempt. The plaintiff, Minneapolis Star and Tribune Company, was a large metropolitan publication with a substantial printing budget in excess of the exemption limits, and was thus denied the exemption. Having been assessed the use tax, it paid under protest and sought a refund, claiming that both the method of taxation and the exemption were violations of the guarantees of freedom of speech and press contained in the First Amendment of the United States Constitution.
The Supreme Court, in Minneapolis Star, was concerned with two distinct features *905 of the taxing scheme: one pertained to the imposition of a special tax on First Amendment entities and the other pertained to an exemption of certain members of the press and not others, resulting in "differential treatment" even among members of the press. The Supreme Court declared the Minnesota statute unconstitutional on both grounds. First, the use tax only applied to publishers, and was not generally applicable to other businesses. The Court held it unconstitutional to treat publishers (the press) differently from other taxpayers where no state interest of compelling importance could be advanced in support of such treatment. Secondly, the $100,000 exemption was held to violate the First Amendment, because it impermissibly subjected only a small group of newspapers to the tax while exempting others. This discriminatory inter-publication impact of the exemption was by itself sufficient to render the tax invalid.
The effect of the $100,000 exemption enacted in 1974 is that only a handful of publishers pay any tax at all and even fewer pay any significant [taxes].... Whatever the motive of the legislature in this case, we think that recognizing a power in the State not only to single out the press but also to tailor the tax so that it singles out a few members of the press presents such a potential for abuse that no interest ... can justify the scheme. (Emphasis added.) Minneapolis Star, supra, 591, 592, 103 S.Ct. at 1375.
The present case does not involve the first ground of the holding in Minneapolis Star, since it arises in the context of the general sales tax rather than a special use tax. But Louisiana's sales tax exemption produces the same discriminatory result between newspaper publishers and magazine publishers in this state that the Minnesota statute created between small periodical publishers and large newspapers. The disparate tax treatment of some First Amendment entities is the type of "singling out" that the United States Supreme Court held unconstitutional in Minneapolis Star.
Justice White explained in his concurrence in Minneapolis Star, that the exemption was sufficient ground for finding the Minnesota statute unconstitutional:
This feature alone is sufficient reason to invalidate the Minnesota tax and reverse the judgment of the Minnesota Supreme Court. The Court recognizes that Minnesota's tax violates the First Amendment for this reason, and I subscribe to Part V of the Court's opinion and concur in the judgment.
Having found fully sufficient grounds for decision, the Court need go no further. The question whether Minnesota or another State may impose a use tax on paper and ink that is not targeted on a small group of newspapers could be left for another day.
Allowing an exemption to some members of the press and denying it to others is facially discriminatory within the interpretation of Minneapolis Star.
The "equality of status" under the First Amendment that the Court required in Police Department of the City of Chicago v. Mosley, supra, is absent from the Louisiana sales tax statute because the tax applies to the sale of magazines but not to the sale of newspapers. In essence, the legislature has selected who may exercise First Amendment rights free of taxation, and who may not. A thorough review of the Louisiana sales tax statutes and regulations and the record before us reveals no evidence of any compelling or overriding state interest which is furthered by the differential application of this sales tax to magazines, while exempting newspapers. However much the legislature may have intended to advance the causes of a free press and an informed public, that governmental act of selecting one form of "protected" speech over another for exempt status violates the instant taxpayer's First Amendment rights.
Louisiana tax regulations exempt from the sales tax a specific kind of "newspaper":
[A]n unbound publication appearing at regular intervals, having a second class mailing privilege, having a bona fide paid *906 circulation to actual subscribers, publishing a substantial part of its contents as news matter and containing reports of happenings of recent occurrence of a varied character, such as political, social, moral and religious subjects and designed for the information of the general reader. This exemption for newspapers includes all printed matter that goes into the making-up of a newspaper if such printed matter is distributed with and as a part of the newspaper, including inserts. The definition does not include magazines and does not include any other printed matter, regardless by whom printed, that is not a part of and distributed with a newspaper. Thus, printed matter that goes into a newspaper and is distributed with it is exempt from sales tax while the same printed matter that does not go into a newspaper or is not distributed with it is not exempt. Louisiana Regulations, Article 47:305.21.

A newspaper is not a newspaper because it is printed on newsprint paper, is unbound, or carries articles on a variety of subjects "such as political, social, moral and religious subjects". A newspaper does not cease to be a newspaper because the publisher decides to print on glossy paper, use a different format, and staple the publication together. The state may neither discriminate in favor of one, nor deny equal protection to one because of the content of the publication.
Where constitutionally-protected speech is involved, as in the instant case, the Supreme Court's decision in First National Bank of Boston v. Bellotti, supra, is controlling:
In the realm of protected speech, the legislature is constitutionally disqualified from dictating the subjects about which persons may speak and the speakers who may address a public issue.... Especially where, as here, the legislature's suppression of speech suggests an attempt to give one side ... an advantage in expressing its views to the people, the First Amendment is plainly offended. 435 U.S. at 784-786, 98 S.Ct. at 1420-1421.
Louisiana's tax on magazines but not newspapers is defended as being a "general sales tax," not a special tax on publishing. But, where a general sales tax applies unequally to different forms of speech protected by the Constitution, the name used by the state is irrelevant and immaterial. By whatever name, a tax that provides "differential taxation of the press," is treatment that the United States Supreme Court found "would have troubled the Framers of the First Amendment." Minneapolis Star, 460 U.S. at 583, 103 S.Ct. at 1376.
Louisiana in the application of its state sales tax differentiates between forms of speech equally protected by the First Amendment. Because of that infringement upon First Amendment rights, the tax is not an "ordinary form of taxation." The Louisiana sales tax, because it taxes the retail sale of magazines but not sale of newspapers, both of which are protected equally by the Constitution, is clearly unconstitutional as applied to Louisiana Life.
Louisiana Life seeks attorney fees on the ground that this is a claim under the Civil Rights Act, 42 U.S.C. Sec. 1983 et seq.[2] This is not such a claim. This is a suit by Louisiana Life for a refund of sales taxes paid under protest. The Louisiana sales tax in its present form is inapplicable to appellant. There is no statutory provision for awarding attorney fees in such a case. The claim for attorney fees is denied.
For the foregoing reasons, the judgment appealed is reversed. The appellant is entitled to a refund of all taxes paid under protest. Attorney fees are denied. Appellant's claim does not arise under 42 U.S.C. Section 1988. Costs of this appeal in *907 amount of $1,122.95 are assessed against the State, to the extent permitted by law.
REVERSED AND RENDERED.
NOTES
[1] It reads:

§ 305 Exclusions and exemptions from the [§ 302] tax
D. (1) The sale at retail, the use, the consumption, the distribution ... of the following tangible personal property is hereby specifically exempted from the tax imposed by this Chapter.
. . . . .
(e) Newspapers.
[2] The allegation regarding 42 U.S.C. Sec. 1983 is not made until plaintiff's second supplemental and amending petition, filed almost two years after the original suit, and is a mere conclusion of the pleader with no facts alleged to support such conclusion.