**HEARST CORPORATION, Appellant,**

v.

**IOWA DEPARTMENT OF REVENUE AND FINANCE, Appellee.**

No. 89–1863.

Supreme Court of Iowa.

Sept. 19, 1990.

Rehearing Denied Oct. 18, 1990.

As Corrected Oct. 19, 1990.

John V. Donnelly and Harold N. Schneebeck of Brown, Winick, Graves, Donnelly, Baskerville, and Schoenebaum, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Lucille M. Hardy, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Appellant, The Hearst Corporation (Hearst), appeals from an adverse ruling of the district court. The district court affirmed the decision of the Iowa Department of Revenue and Finance (department), holding that the taxed publications of Hearst are not "newspapers" as that undefined term is used in Iowa Code section 422.45(9) (1977) and, therefore, do not qualify for an exemption to Iowa's sales and use tax; that the tax on Hearst's publications is not in violation of the freedom of speech and press provisions of the First Amendment to the United States and Iowa Constitutions; that the tax does not violate the equal protection provisions of the United States and Iowa Constitutions; that the tax is not in violation of the due process provisions of the United States and Iowa Constitutions; that the tax does not violate the commerce clause to the United States Constitution; that Hearst is not entitled to the award of attorneys' fees; and that Hearst is liable for the penalty authorized pursuant to Iowa Code section 423.18 (1983).

## I. *Background Facts and Proceedings.*

Hearst is a Delaware corporation with its principal place of business located in New York, New York. Hearst, among other things, is engaged in the publication and sale of various publications to subscribers and vendors throughout the United States. There are fourteen Hearst publications involved in this case, each of which has a large subscription circulation throughout the United States. These publications are Colonial Homes, Cosmopolitan, Country Living, Good Housekeeping, Harper's Ba-zaar, Motor, House Beautiful, Motor Boating and Sailing, Popular Mechanics, Science Digest, Sports Afield, Town and Country, Connoisseur, and Redbook.

Between October 1, 1978, and December 31, 1982 (the period in question), Hearst solicited subscription orders by United States mail for its publications from Iowa residents. All subscription solicitations by Hearst originated outside of the State of Iowa, were accepted or rejected by Hearst outside of the State of Iowa, were printed outside of the State of Iowa, and were sent by second class mail directly to Iowa subscribers from points originating outside of the State of Iowa. All of the publications in question were published monthly, except for Colonial Homes which was published bimonthly. During the period in question Hearst collected no Iowa use tax from its Iowa subscribers.

On April 25, 1984, the department issued a notice of assessment for retail use tax relating to the Hearst Corporation's alleged retail use tax liability. This assessment reflects the department's determination that the use tax was due from Hearst by reason of Hearst's failure to collect use tax from its Iowa subscribers for the various publications published by Hearst and sold by subscription to Iowa residents. Hearst filed a timely protest to the assessment with the hearing officer of the department.

On October 27, 1987, a hearing was held before an administrative law judge. In a proposed order, issued July 6, 1988, the administrative law judge upheld the department's assessment for retail use tax. On July 21, 1988, Hearst appealed the proposed order to the director of the department. The director affirmed the proposed order and adopted it in its entirety. Thereafter, on September 23, 1988, Hearst filed a timely petition for judicial review of the director's order with the clerk of the district court for Polk county. The matter was then submitted to the Iowa District Court for Polk County on September 26, 1989, on the record made before the administrative law judge, written briefs, and oral

arguments. The district court issued its ruling on November 6, 1989, holding adversely to Hearst and Hearst appeals. We affirm.

## II. *Scope of Review.*

The court may review the decision of the district court pursuant to Iowa Code section 17A.20 (1989), which provides that:

An aggrieved or adversely affected party to the judicial review proceeding may obtain a review of any final judgment of the district court under this chapter by appeal. The appeal shall be taken as in other civil cases, although the appeal may be taken regardless of the amount involved.

Furthermore, pursuant to Iowa Code section 17A.19(8) (1989):

The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal and including declaratory relief, if substantial rights of the petitioner have been prejudiced because the agency action is:

a. In violation of constitutional or statutory provisions;

b. In excess of the statutory authority of the agency;

. . . .

e. Affected by other error of law;

. . . .

g. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

The scope of this review is at law, not de novo, therefore we are limited to those issues considered in the record made before the agency. *Hussein v. Tama Meat Packing Corp.*, 394 N.W.2d 340, 341 (Iowa 1986); *Taylor v. Iowa Dep't of Job Serv.*, 362 N.W.2d 534, 537 (Iowa 1985).

Hearst challenges the agency action based on the above-enumerated provisions.

## III. *The Taxation Scheme.*

Under Iowa's sales and use taxation scheme, a sales tax is imposed on the retail sales of magazines while retail sales of "newspapers" are exempt from taxation. *See* Iowa Code §§ 422.43, 422.45(9) (1977); *see also* Iowa Code § 423.4(4) (1977).

Iowa Code section 422.43 (1977) provides in part that:

There is hereby imposed a tax of three percent upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this division, sold at retail in the state to consumers or users. . . .

The Code, pursuant to section 422.45(9) (1977), further provides that:

There are hereby specifically exempted from the provisions of this division and from the computation of the amount of tax imposed by it the following:

9. Gross receipts from the sales of newspapers, free newspapers or shoppers guides and the printing and publishing thereof.

Likewise, the "use" of such tangible personal property is exempt from Iowa use tax by virtue of Iowa Code section 423.4(4) (1977) which also provides in part that:

The use in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this chapter:

4. Tangible personal property, the gross receipts from the sale of which are exempted from the retail sales tax by the terms of section 422.45. . . .

When interpreting these statutes we are guided by familiar principles of statutory construction. Of course, the polestar is legislative intent. *Iowa Dep't of Revenue v. Iowa Merit Employment Comm'n*, 243 N.W.2d 610, 614 (Iowa 1976). Our goal then, is to ascertain that intent and, if possible, give it effect. *Isaacson v. Iowa State Tax Comm'n*, 183 N.W.2d 693, 695 (Iowa 1971). To ascertain the legislative intent we must look to what the legislature said, rather than what it should or might have said. *State v. Hesford*, 242 N.W.2d 256, 258 (Iowa 1976). Words are given

their ordinary meaning unless defined differently by the legislature or possessed of a particular and appropriate meaning in law. *Id.* However, we must avoid legislating in our own right and placing upon statutory language a strained, impractical or absurd construction. *Doe v. Ray,* 251 N.W.2d 496, 501 (Iowa 1977). Weight should be given to the department's interpretation of the statutes, particularly when they are of long standing, but the court is not bound by that interpretation. *Sommers v. Iowa Civil Rights Comm'n,* 337 N.W.2d 470, 473 (Iowa 1983).

It is the contention of the Hearst Corporation that its publications fall within the purview of the "newspaper" exemption of Iowa Code sections 422.45(9) (1977) and 423.4(4) (1977). Otherwise, Hearst argues, the tax is discriminatory and cannot withstand constitutional challenges.

IV. *Are the Subject Publications "Newspapers?"*

■ Whether the Hearst publications may be considered "newspapers" depends upon the meaning of that term as it is used in Iowa Code section 422.45(9) (1977), a tax exemption statute that must be strictly construed against the taxpayer and in favor of taxation. *Goergen v. State Tax Comm'n,* 165 N.W.2d 782, 786 (Iowa 1969). The term "newspaper" is not defined in the statute. In fact, the department was without a rule defining the term until January 28, 1981, when it adopted the following definition:

> A newspaper is defined as a paper that is printed and distributed daily, weekly, or at some other regular and usually short interval and that generally contains news, articles of opinion (editorials), features, advertising, or other matter regarded as of current interest.

701 Iowa Admin.Code 18.42(1) (1981) (amended 1982 striking "generally" from definition); *see also Webster's Third New Int'l Dictionary* 1524 (1976) (defining "Newspaper" in exactly the same terms).

■ Webster's Third New International Dictionary defines a "magazine" as "a periodical containing special material directed at a group having a particular hobby, interest or profession...." *Id.* at 1357. The dictionary also defines a "periodical" as "a magazine or other publication of which the issues appear at stated or regular intervals —usu. used of a publication appearing more frequently than annually but infrequently used of a newspaper." *Id.* at 1680.

Hearst itself has made a distinction between its publications, apparently based on common parlance. Its advertisements state that "Hearst is more than 135 businesses including magazines, broadcasting, newspapers, books, business publishing and cable communications." Hearst lists the publications in question here as "magazines" and separately enumerates the newspapers it publishes. These distinctions, that track with the dictionary meanings, must have been accepted by Hearst as having sufficient clarity of meaning for use in communicating with the general public.

The administrative agency also found the Hearst publications in question to be different from newspapers in that they were printed monthly or bimonthly. They were more costly, had a substantially longer useful life than newspapers, and targeted a smaller audience that was interested in a specific subject matter. Also, their format was different as was the paper used in its printing.

We agree that the administrative agency had substantial evidence to support its finding based on these facts and the ordinary meaning of these terms that the Hearst publications are properly classified as "magazines" or "periodicals" and not "newspapers." To classify the Hearst publications as "newspapers" would be to place a strained, impractical or absurd construction upon the language of the statute. *Doe,* 251 N.W.2d at 501.

Hearst contends that this finding, that its publications are not "newspapers" based on form, is illusory and that their publications are in fact being unconstitutionally discriminated against based on their content. In support of its contention, Hearst offered several exhibits including such publications as Barrons and The

Sporting News. Hearst argues that their publications meet all of the noncontent criteria of the "newspaper" exemption of Iowa Code section 422.45(9) (1977), but yet are taxed as nonnewspapers, that the distinctions being drawn by the statute are in fact based upon the content of the publication and not its form. We find no merit to this contention.

Although their status is not before this court, publications such as Barrons and The Sporting News, have been classified by the department as nonnewspapers for purposes of the Iowa Code section 422.45(9) (1977) tax exemption. We observe that although a publication may contain some of the noncontent criteria that distinguish a "newspaper" from other publications that are taxable, it may still not qualify under the "newspaper" exemption. Our review of the facts of this case points to this conclusion.

The agency properly found numerous differences between the Hearst publications at issue and newspapers based on their noncontent factors, as herein enumerated. In addition, there is no evidence in the record to support a finding that the legislature meant to include "magazines" or "periodicals" within its definition of "newspaper." We may glean from the fact that since the legislature adopted the Webster definition of "newspaper" for purposes of determining what publications qualify for the Iowa Code section 422.45(9) (1977) tax exemption, that it was also the intention of the legislature to exclude from that exemption all other publications—such as "magazines" or "periodicals" as defined by Webster's—since not specifically set out in the statute as exempt. Accordingly, we hold the Hearst publications do not qualify for the Iowa tax exemption.

## V. *Hearst's Constitutional Challenges.*

At the outset we must recognize the presumption of constitutionality of these statutes. The rule is well settled that "a statute will not be declared unconstitutional unless it clearly, palpably, and without doubt infringes the constitution." *Zilm v.*

*Zoning Bd. of Adjustment*, 260 Iowa 787, 150 N.W.2d 606, 609 (1967). We have also said in various ways that every reasonable doubt must be resolved in favor of constitutionality. *Hansen v. Haugh*, 260 Iowa 236, 149 N.W.2d 169, 174 (1967).

A. Freedom of Speech, or of the Press.

■ The First Amendment to the Constitution of the United States provides that "Congress shall make no law ... abridging the freedom of speech, or of the press...." U.S. Const. amend. I. This amendment, of course, is made applicable to the several states through the Fourteenth Amendment. Section 7 of article I of the Iowa Constitution similarly provides. The language of the first amendment clearly "does not prohibit all regulation of the press." *Minneapolis Star & Tribune v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 581, 103 S.Ct. 1365, 1369, 75 L.Ed.2d 295 (1983). In fact, it is beyond dispute that some publications may be subjected to generally-applicable economic regulations by the states and the federal government without creating constitutional problems. *Id.* Problems arise, however, when "a discriminatory tax on the press burdens rights protected by the first amendment." *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 227, 107 S.Ct. 1722, 1726, 95 L.Ed.2d 209 (1987) (footnote omitted). The Court makes it clear in both *Minneapolis Star* and *Arkansas Writers' Project* that a scheme of taxation which differentiates between media sources of the same type will not pass muster under the first amendment unless a compelling justification for the differential treatment exists. For example, a sales tax on cable television service but not on decoders for unscrambling satellite television broadcasts was held to violate first amendment protections. *Medlock v. Pledger*, 301 Ark. 483, 785 S.W.2d 202, 204 (1990). Here the court also declined to apply first amendment principles so broadly as to hold that all mass media must be taxed in the same way. The argument that newspapers and magazines, that were not taxed, should be categorized with cable television service, was not directly at issue before the court but was inferentially spurned. In the case at bar, unlike *Medlock*, we are faced with a

statutory scheme of taxation that differentiates not between media sources of the same type, but between media sources of different types. *See also Austin v. Michigan Chamber of Commerce*, —— U.S. ——, ——, 110 S.Ct. 1391, 1401, 108 L.Ed.2d 652 (1990), where the compelling reason of preventing corruption in the political arena justified the statutes's restrictions.

Appellant Hearst vigorously contends that the distinction between types of media sources is inconsequential and that the Court's decisions in *Minneapolis Star* and *Arkansas Writers' Project* nevertheless control in the present case. We disagree.

In *Minneapolis Star*, the Minnesota Legislature imposed a special "use tax" on the cost of paper and ink products consumed in the production of a publication. This legislation was later amended to exempt the first $100,000 worth of ink and paper consumed by a publication in any calendar year, in effect giving each publication a $4,000 annual tax credit. The net effect of these provisions was that only a handful of publishers were actually subject to the ink and paper tax. *Minneapolis Star*, 460 U.S. at 578–79, 103 S.Ct. at 1368.

The Supreme Court, in rejecting the state's argument that the tax was valid, found two distinct forms of discrimination. First, as opposed to a generally-applicable economic regulation, such as Iowa's, to which the press can legitimately be subject, the Minnesota Legislature created a special tax that applies only to certain publications protected by the first amendment. *Id.* at 581, 103 S.Ct. at 1370. Second, the tax was tailored in such a way that it singled out and targeted a small group of newspapers. *Id.* at 591, 103 S.Ct. at 1375. In holding that such a differential and discriminatory scheme of taxation is invalid under the first amendment, the court noted that:

> A power to tax differently, as opposed to a power to tax generally, gives a government a powerful weapon against the taxpayer selected. When the State imposes a generally applicable tax, there is little cause for concern. We need not fear that a government will destroy a selected group of taxpayers by burdensome taxa-

tion if it must impose the same burden on the rest of its constituency. When the State singles out the press, though, the political constraints that prevent a legislature from passing crippling taxes of general applicability are weakened, and the threat of burdensome taxes becomes acute. That threat can operate as effectively as a censor to check critical comment by the press, undercutting the basic assumption of our political system that the press will often serve as an important restraint on government.

*Id.* at 585, 103 S.Ct. at 1371–72 (citations omitted). The Court also found great potential for abuse if it recognized a power in the state to tax selected members of the press. *Id.* at 592, 103 S.Ct. at 1375. *Cf. Village Publishing Corp. v. North Carolina Dep't of Revenue*, 472 U.S. 1001, 105 S.Ct. 2693, 86 L.Ed.2d 710 (1985) (Justice White dissenting from dismissal of appeal for want of a substantial federal question); *Department of Revenue v. Magazine Publishers of America, Inc.*, 565 So.2d 1304 (Fla.1990).

In contrast to the Minnesota scheme, the Iowa structure does not create a special tax that applies only to certain publications protected by the first amendment, nor is it tailored in such a way that it singles out and targets small groups of publications. Iowa's tax is a generally-applicable retail sales tax whereby gross receipts from retail sales of tangible personal property are taxed. *See* Iowa Code § 422.43 (1977). In addition, in order to reach those retail sales that cannot be subjected to state sales tax, Iowa imposes a complimentary generally-applicable retail use tax whereby the use in Iowa of tangible personal property is taxed. *See* Iowa Code § 423.4(4) (1977); *Dain Mfg. of Iowa v. Iowa State Tax Comm'n*, 237 Iowa 531, 534, 22 N.W.2d 786, 788 (1946). Thus, while there are a number of sales and use tax exemptions in Iowa, *see generally* Iowa Code section 422.-43 (1977), most retail transactions involving tangible personal property for use or consumption in the state of Iowa are taxed. *See Lee Enters., Inc. v. Iowa State Tax Comm'n*, 162 N.W.2d 730, 754–55 (Iowa 1969) (holding that Iowa sales and use tax

law, as amended, is of general application). The only deviation from this general scheme of taxation is that "newspapers" and "shoppers guides" are granted an exemption from the tax, while other publications are not. And since the tax does not target any small groups of publishers, either directly or indirectly, the tax satisfies the standards set by *Minneapolis Star*.

The issue of selective taxation of publications was once again addressed in *Arkansas Writers' Project*, where the Court examined an Arkansas sales tax scheme which taxed general interest magazines, but exempted newspapers and "religious, professional, trade and sports journals ..." *Id.*, 481 U.S. at 224, 107 S.Ct. at 1724. The net effect of the Arkansas tax scheme was that only a few Arkansas magazines would ever pay any sales tax.

The Court again placed great emphasis on the potential for abuse by the state if it was to recognize a power to tax selected members of the press. *Id.* at 228, 107 S.Ct. at 1727. The Court also found that both types of discrimination identified in *Minneapolis Star* could be established even where there is no evidence of an improper censorial motive, *Minneapolis Star*, 460 U.S. at 592, 103 S.Ct. at 1375, "because selective taxation of the press—either singling out the press as a whole or targeting individual members of the press—poses a particular danger of abuse by the State." *Arkansas Writers' Project*, 481 U.S. at 228, 107 S.Ct. at 1727. Because the Arkansas sales tax scheme treated some magazines less favorably than others, it suffered from the second type of discrimination identified by the Court in *Minneapolis Star*. Additionally, the *Arkansas Writers' Project* case involves a much more distressing use of selective taxation than *Minneapolis Star* because the basis upon which the state differentiated between the different magazines is particularly repugnant to first amendment principles: namely, that a magazine's tax status depended entirely upon its content. *Id.* The Court also noted that this scheme completely contradicts the strictures of the first amendment which, "above all else, ... means that

government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* (quoting *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972)). "Such official scrutiny of the content of publications as the basis for imposing a tax is entirely incompatible with the First Amendment's guarantee of freedom of the press." *Id.*, 481 U.S. at 230, 107 S.Ct. at 1728.

Relying on *Arkansas Writers' Project*, Hearst would have this court believe that Iowa Code section 422.45(9) (1977), which exempts "newspapers" and not "magazines" or "periodicals" from Iowa's sales and use taxation scheme, is facially invalid because the exemption, in substance, is based upon the content of a publication, rather than other facially valid noncontent criteria. We find little merit to this argument.

The facts of the case before us are markedly different from those in *Arkansas Writers' Project*. While the classification of the writing as "news, articles of opinion (editorials), features, advertising, or other matter regarded as of current interest" is a consideration, the focus is not on the content of the journalism. Rather, the form and frequency of the publication are the primary factors for determining whether a publication qualifies for the Iowa sales and use tax exemption. Hearst, or anyone else for that matter, is free under the rule to publish and sell whatever content they choose and to choose whatever form they desire. The Iowa law does not scrutinize the content, but rather the form and frequency of publication. There is no censorial threat, motive, or element imposed by the rules in this case. Because the form of a publication is a noncontent based consideration, the Iowa statute complies with the standards set forth by the Supreme Court in *Arkansas Writers' Project*.

The Iowa tax scheme finds further support in *Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983), where the Supreme Court upheld the denial of a tax exemption for a nonprofit organization en-

gaged in lobbying activities even though veterans' organizations that lobbied on legislation received the exemption. In upholding this differential treatment of taxpayers, based solely upon whether or not a particular taxpayer chose to exercise his freedom of speech, the court noted that "tax exemptions and tax deductibility are a form of *subsidy* that is administered through the tax system," *Id.* at 544, 103 S.Ct. at 2000 (emphasis added) (reaffirming that legislative tax classifications may be broad and that "legislatures have especially broad latitude in creating classifications and distinctions in tax statutes"). *Id.* at 547, 103 S.Ct. at 2002.

The legislative classification in Iowa that distinguishes between "newspapers" and "magazines" or "periodicals" is supported by *Regan* wherein the Court stated that:

The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized ... [T]he passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.

*Regan,* 461 U.S. at 547, 103 S.Ct. at 2002 (quoting *Madden v. Kentucky,* 309 U.S. 83, 87–88, 60 S.Ct. 406, 407–08, 84 L.Ed. 590 (1940) (footnotes omitted)). While the government may not deny a benefit to an organization which decides to exercise its constitutional rights, the government is not required to subsidize those constitutional rights exercised. *Id.,* 461 U.S. at 545, 103 S.Ct. at 2001. We agree with the district court in concluding that the Iowa Legislature may subsidize one form of publication (*i.e.,* "newspapers"), but is not required by the first amendment to also subsidize other forms of publications as long as it has a rational noncontent basis for doing so. Furthermore, because the Iowa law does not discriminate between media sources of the same type which would subject only a handful of publications to the state sales and use tax as in *Minneapolis Star* and *Arkansas Writers' Project,* and because the Iowa exemption is not impermissibly directed at a publication's content, as in *Arkansas Writers' Project,* the Iowa tax scheme which exempts "newspapers," but not "magazines" or "periodicals," from the generally-applicable Iowa retail sales and use tax is not the type of suspect tax that violates the first amendment. The decision of the district court is therefore affirmed on this ground.

### B. Equal Protection of the Law.

The Fourteenth Amendment to the Constitution of the United States provides that "no state shall ... deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV. Section 6 of article 1 of the Iowa Constitution places substantially the same limitations upon the state legislation as does the equal protection clause of the fourteenth amendment. *See* Iowa Const. art. I, § 6; *see also City of Waterloo v. Selden,* 251 N.W.2d 506, 509 (Iowa 1977).

Our first step in analyzing the equal protection question is to determine whether a rational basis test or a more stringent standard should be applied. *Rudolph v. Iowa Methodist Medical Center,* 293 N.W.2d 550, 557 (Iowa 1980).

Hearst contends that because it is being deprived of equal protection of the law under the Iowa statutes, and because its first amendment rights are being infringed upon, the classifications are subject to strict judicial scrutiny. An example of the

application of this standard is *Austin v. Michigan Chamber of Commerce,* — U.S. —, —, 110 S.Ct. 1391, 1401, 108 L.Ed.2d 652 (1990), where the Court considered a Michigan statute which prohibited a nonprofit corporation from using its general treasury funds to support a political candidate. Even under strict scrutiny the Court held the equal protection clause was not violated.

■ Generally, statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose. *Regan,* 461 U.S. at 547, 103 S.Ct. at 2001. Statutes are subjected to a higher level of scrutiny if they interfere with the exercise of a fundamental right such as freedom of speech or the press. *Id.* at 547, 103 S.Ct. at 2001–02. However, in tax matters even more than in other fields, the legislature possesses the greatest freedom in classification. *Id.,* 103 S.Ct. at 2002; *Dickinson v. Porter,* 240 Iowa 393, 35 N.W.2d 66, 72 (1948), *appeal dismissed,* 338 U.S. 843, 70 S.Ct. 88, 94 L.Ed. 515 (1949).

The situation in the present case, though factually distinguishable, closely parallels the situation in *Regan* on a doctrinal level as applied to this issue. The Iowa Legislature, through its state tax provisions, has chosen to subsidize newspapers and shoppers guides and no other forms of publication. This is similar to the subsidy granted veterans' organizations in *Regan.* In treating the tax exemption as a form of subsidy, the *Regan* Court stated that:

The Court of Appeals nonetheless held that "strict scrutiny" is required because the statute "*affect[s]* First Amendment rights on a discriminatory basis." [*Taxation with Representation of Washington v. Regan* ] 219 U.S.App.D.C. [117], at 130, 676 F.2d [715], at 728 [1982] (emphasis supplied). Its opinion suggests that strict scrutiny applies whenever Congress subsidizes some speech, but not all speech. *This is not the law.* Congress could, for example, grant funds to an organization dedicated to combating teenage drug abuse, but condition the grant by providing that none of the money received from Congress should be used to lobby state legislatures. Under *Cammarano* [*v. U.S.,* 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959) ], such a statute would be valid. Congress might also enact a statute providing public money for an organization dedicated to combating teenage alcohol abuse, and impose no condition against using funds obtained from Congress for lobbying. The existence of the second statute would not make the first statute subject to strict scrutiny.

*Id.,* 461 U.S. at 548–49, 103 S.Ct. at 2002 (emphasis added).

In finding that strict scrutiny did not apply, the *Regan* Court specifically stated that "[t]hese are scarcely novel principles. We have held in several contexts that a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny." *Id.* at 549, 103 S.Ct. at 2003. The constitution does not require that the government remove all obstacles in the path of the exercise of a person's rights. *Id.* at 549, 103 S.Ct. at 2003. Where governmental subsidies are not aimed at the suppression of dangerous ideas, its power to encourage actions deemed to be in the public interest is necessarily far broader. *Id.* at 550, 103 S.Ct. at 2003.

■ In both *Regan* and the case at bar, the legislature has chosen to subsidize one group's rights while not subsidizing the other. And since, as previously discussed, we found no suppression of Hearst's fundamental rights, strict scrutiny does not apply. The law in Iowa is that a challenged classification will not be subject to strict scrutiny unless it impinges upon a fundamental right or disadvantages an inherently-suspect class. *State v. Wehde,* 258 N.W.2d 347, 352 (Iowa 1977). Consequently, we apply a rational basis standard in deciding whether Iowa's statutory scheme of taxation in fact violates Hearst's guaranteed right to equal protection.

■ Under a rational basis standard, a legislative classification will survive judicial scrutiny if it bears a rational relation to

a legitimate governmental purpose. *Regan*, 461 U.S. at 547, 103 S.Ct. at 2001; *Veach v. Iowa Dep't of Transp.*, 374 N.W.2d 248, 249 (Iowa 1985). The rational basis standard is easily met in challenges to tax statutes. *Klein v. Iowa Dep't of Revenue & Fin.*, 451 N.W.2d 837 (Iowa 1990). In the case before us the department has presented sufficient evidence to persuade this court that the legislative classification at issue serves legitimate state interests.

■ The department asserts two state interests that are furthered by the Iowa tax scheme which we consider to be legitimate. First, is the interest the State has in encouraging the reading of newspapers and thereby enhancing the general knowledge and literacy of its citizenry. By subsidizing the price of newspapers through the "newspaper" exemption the State makes newspapers available to those of even moderate to low means; an action deemed to be in the public interest. With this exemption, newspapers will remain an inexpensive source of public information which most people will be able to afford.

Secondly, the State has a legitimate interest in maintaining administrative economy. The majority of sales and collections on the sale of newspapers are made by child carriers. It would be uneconomical and highly impractical if the tax department was forced to monitor, regulate and audit the hundreds of carriers who sell and collect for newspapers on a daily and/or weekly basis. To expect these child carriers, the majority of whom are between the ages of ten and twelve, to correctly figure, collect, and remit the proper amount of tax due is ludicrous. We find that the legislature was reasonable in concluding that the state interest would be better served by exempting these particular sales.

Hearst further contends that the "newspaper" exemption is fatally over-broad and that if the problem is carrier sales, the Iowa tax exemption should have been narrowly tailored to only deal with that specific problem. We find little merit in this contention. Hearst's argument is not compatible with the *Regan* decision and, even

assuming that it is, the resulting statutory exemption would cause the differential taxation of same source media as condemned by the Supreme Court in both *Minneapolis Star* and *Arkansas Writers' Project*. Uniform treatment of same source media advances the principles and standards set out by the Supreme Court in *Minneapolis Star* and *Arkansas Writers' Project* and forestalls any content discrimination claims by members of the same media.

We agree with the department that there is no iron-clad "all or nothing" rule for the taxation, or exemption from taxation, of speech to be found in the constitution. Such a rule has been espoused in several state court cases but without reasoned analysis. *See Jones & Co. v. State ex rel. Tax Comm'n*, 787 P.2d 843 (Okla.1990); *Louisiana Life, Ltd. v. McNamara*, 504 So.2d 900 (La.App. 1 Cir.1987). Furthermore, it was not embraced by the Supreme Court in *Arkansas Writers' Project* and is inconsistent with *Regan*. We find that the rational basis standard is the proper constitutional test to be applied in this case, and because the Iowa tax law satisfies that standard, Hearst's equal protection claim must be rejected.

C. Due Process of Law.

Section 1 of the Fourteenth Amendment to the Constitution of the United States provides in part that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law;". Section 9 of article I of the Iowa Constitution similarly provides.

All of the provisions of the First Amendment to the Constitution of the United States have been made applicable to the several states through the Fourteenth Amendment, including freedom of speech and of the press. *Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 630, 69 L.Ed. 1138 (1925). Hearst contends that if it is not being deprived of its fundamental rights under the first amendment, Iowa Code section 422.45(9) (1977) is so vague, indefinite, and uncertain that it cannot be determined by generally-acceptable rules of construction what publications qualify for

the exemption within the parameters of that section.

▮▮ The Supreme Court has recognized that a noncriminal statute is unconstitutionally vague under the due process clause when its language does not convey a sufficiently definite warning as to proscribed conduct when measured by common understanding or practice. *Arnett v. Kennedy,* 416 U.S. 134, 158–64, 94 S.Ct. 1633, 1646–47, 40 L.Ed.2d 15 (1974). However, a noncriminal statute is not unconstitutionally vague where its terms are such that the ordinary person exercising common sense can sufficiently understand and fulfill its proscriptions. *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973). Only when persons must necessarily guess at the meaning of a statute and differ as to its application must it be declared invalid. *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). The root of the vagueness doctrine is a rough idea of fairness. *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).

▮▮ When confronted with vagueness challenges we have pointed out that a statute meets the constitutional test if its meaning is fairly ascertainable by reference to similar statutes, other judicial determinations, and to the dictionary, or if the words themselves have a common and generally-accepted meaning. *Iron Workers Local No. 67 v. Hart,* 191 N.W.2d 758, 772 (Iowa 1971). Even if more specific language could be devised, it is apparent that, in the absence of criminal sanctions a statute requires less literal exactitude to comport with due process; unless the statute clearly, palpably, and without doubt infringes the constitution it will be upheld. *Lee Enter., Inc. v. Iowa State Tax Comm'n,* 162 N.W.2d 730, 739 (Iowa 1969).

▮▮ Both on its face and as applied to the facts in this case, the term "newspaper" passes constitutional muster. Hearst itself has classified, for public consumption, its various publications as either "newspapers" or "magazines." We also find that even before the department formally adopted a definition for the term "newspaper" on January 28, 1981, the meanings of the terms of the statute were sufficiently clear that Hearst could have fulfilled its proscriptions. The Department was correct in finding that the term "newspaper" as used in Iowa Code section 422.-45(9) (1977) is not so vague, indefinite, and uncertain, as to deprive Hearst of its liberty or property interests without due process of law.

## D. The Commerce Clause.

▮▮ Article I section 8 clause 3 to the Constitution to the United States provides that "[t]he Congress shall have the power ... to regulate commerce ... among the several states...." However, state legislation designed to serve legitimate state interests and applied without discriminating against interstate commerce does not violate the commerce clause even though it may affect interstate commerce. *Consolidated Freightways Corp. of Delaware v. Kassel,* 475 F.Supp. 544, 547 (S.D.Iowa 1979), *aff'd,* 612 F.2d 1064 (8th Cir.1979), probable jurisdiction noted, 446 U.S. 950, 100 S.Ct. 2915, 64 L.Ed.2d 806 (1980), *aff'd,* 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981), *cert. dismissed,* 455 U.S. 329, 102 S.Ct. 1496, 71 L.Ed.2d 187 (1982).

Hearst contends that under the commerce clause the practical effect of the Iowa Code section 422.45(9) (1977) "newspaper" exemption is to discriminate in favor of local (Iowa) print media and against foreign (non-Iowa) source print media. This results in discrimination against interstate commerce in favor of local commerce in the fight for the subscriber dollar. The district court found no merit to this argument and neither do we.

▮▮ The Supreme Court stated in *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 329, 97 S.Ct. 599, 607, 50 L.Ed.2d 514 (1977) (quoting *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 458, 79 S.Ct. 357, 362, 3 L.Ed.2d 421 (1959)), that "[n]o state, consistent with the commerce clause, may impose a tax which discriminates against in-

terstate commerce ... by providing a direct commercial advantage to local business." However, the Court has repeatedly held that the commerce clause is not violated when state taxation affects a particular classification, as long as the class distinctions are not based on any in-state or out-of-state criteria. *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 617, 101 S.Ct. 2946, 2953, 69 L.Ed.2d 884 (1981); *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 126, 98 S.Ct. 2207, 2214, 57 L.Ed.2d 91 (1978); *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 277, 98 S.Ct. 2340, 2346, 57 L.Ed.2d 197 (1978) (n. 12); *see also Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 3056, 82 L.Ed.2d 200 (1984), where an illegal discrimination favoring local industries was found.

■ The Iowa tax scheme does not base the "newspaper" exemption upon any in-state or out-of-state criteria. It is the form of the publication, not the source of the commerce, that determines taxation or exemption under the Iowa tax law. Newspapers will be exempted whether published in the State of Iowa or outside the state. In this regard, any of the Hearst Corporation's "newspapers," whether published outside the state and sold within the state or published within the state and sold outside the state, will qualify for the tax exemption. Likewise, all of the Hearst Corporation's "magazines" or "periodicals," whether published within the state and sold outside the state or published outside the state and sold within the state, will be subjected to the Iowa tax. The tax is not aimed at interstate commerce as such. It applies to all taxpayers for services rendered within the state.

There has been no showing that the "newspaper" tax exemption is at all based on the protection of local business, or that the tax on magazines places an undue burden on interstate commerce. *Lee Enters., Inc. v. Iowa State Tax Comm'n,* 162 N.W.2d 730, 743–52 (Iowa 1969). Hearst's commerce clause claim is therefore rejected.

VI. *Recovery of Attorneys Fees.*

■ Hearst argues that because it has raised constitutional claims that it is entitled to recover its reasonable attorneys' fees in this matter pursuant to 42 U.S.Code sections 1983 and 1988. 42 U.S.Code section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the depravation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.Code § 1988 provides in relevant part that:

In any action or proceeding to enforce a provision of sections ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs.

Hearst relies upon these sections and the case of *Blessum v. Howard County Board of Supervisors,* 295 N.W.2d 836 (Iowa 1980), to persuade us that Iowa courts have accepted jurisdiction over section 1983 claims and have entertained those claims brought under that section. *Id.* at 846. Hearst's reliance on this case is misplaced. The *Blessum* case, unlike the present case, was a suit against a county government, did not involve the state or one of its departments, and did not involve a claim regarding the assessment and collection of taxes. Therefore, we find this case totally irrelevant to the present situation.

We are not here faced with a 42 U.S. Code section 1983 action. This case involves judicial review, pursuant to Iowa Code section 422.55 (1977), of a contested case based on an administrative hearing authorized by Iowa Code sections 423.16

and 422.54(2) (1977). None of these statutes authorize, nor do they even mention, the recovery of a reasonable attorneys' fee. As a matter of fact, 42 U.S.Code section 1988 specifically states that a reasonable attorneys' fee will only be awarded to the prevailing party. Since Hearst is not the prevailing party it is not entitled to the award of a reasonable attorneys' fee. We also note that our State Tort Claims Act, section 25A.14(2) (1989), does not apply to authorize any claim arising in respect to the assessment or collection or any tax or fee. Therefore, the decision of the district court is affirmed on this issue.

VII. *The Penalty for Failure to Collect and Remit the Use Tax due.*

Iowa Code section 423.18(1) (1977) provides for the assessment of a penalty for failure to timely collect and remit use tax due unless it can be shown that failure to remit the tax on or before the date due was due to "reasonable cause." *Atlantic Bottling Co. v. Iowa Dep't of Revenue*, 385 N.W.2d 565, 569 (Iowa 1986); *Armstrong's, Inc. v. Iowa Dep't of Revenue*, 320 N.W.2d 623, 629 (Iowa 1982).

 A taxpayer may establish "reasonable cause," as that term is used in our tax penalty statutes, by establishing that it did all that ordinary business care and prudence would demand. *Armstrong's*, 320 N.W.2d at 629. What constitutes "ordinary business care and prudence" is a determination to be made on the facts of each particular case. *Id.* The burden is on the taxpayer, however, to establish reasonable cause by a preponderance of the evidence. *Atlantic Bottling Co.*, 385 N.W.2d at 569. Because the department found that Hearst had not met its burden of proof, we will overturn the department on this issue only if Hearst established reasonable cause as a matter of law. *Id.*

The record does not establish that Hearst's failure to collect and remit the use tax was in any way consistent with ordinary business care and prudence. The only rationale offered by Hearst as a reason for failing to collect and remit the use tax, was

that in its opinion the tax was discriminatory and in violation of the Constitution.

Hearst did not notify the department that it considered the tax to be unconstitutional as applied to the sale of its magazines. It did not seek a declaratory ruling as to the validity of the tax, nor did it remit the tax and subsequently seek a refund based upon the invalidity of the statute. Hearst merely presented its unsupported opinion that the law was unconstitutional. Hearst raised its constitutional objections as a defense to the tax assessment for the first time only after the department had audited Hearst. Ordinary business care and prudence require that the taxpayer follow the law. Consequently, Hearst has not established reasonable cause in this case.

The district court's decision is affirmed. AFFIRMED.