408 So.2d 1214 (1981)
Fannie GODWIN
v.
EAST BATON ROUGE PARISH SCHOOL BOARD et al.
No. 81-C-0946.
Supreme Court of Louisiana.
December 14, 1981.
Rehearing Denied February 19, 1982.
*1215 Woodrow W. Wyatt, Baton Rouge, for plaintiff-applicant.
John F. Ward, Jr., and Robert L. Hammonds, Baton Rouge, for defendant-respondent.
MARCUS, Justice.
Fannie Godwin instituted this action against the East Baton Rouge Parish School Board and its president, George H. Richard, seeking a declaration that Rule VII of the Rules of Procedure of said board,[1] both on *1216 its face and as applied to her, violated her rights of freedom of speech, to assemble peaceably and to petition government for a redress of grievances under the first amendment to the federal constitution and sections 7 and 9 of article 1 of our state constitution.[2] She further sought an injunction prohibiting the enforcement of said rule.
After a hearing, the trial court upheld the constitutionality of Rule VII and denied the application for a preliminary injunction. Plaintiff appealed. The court of appeal affirmed.[3] On plaintiff's application, we granted certiorari to review the correctness of that decision.[4]
The sole issue presented for our consideration is whether that portion of Rule VII that provides that "[n]o sign, placard, or poster which is carried by hand shall be permitted in the School Board office building or any of its rooms" is unconstitutional either on its face or as applied to plaintiff under the first amendment to the federal constitution and sections 7 and 9 of article 1 of our state constitution guaranteeing freedom of speech and the right to assemble peaceably and petition government for a redress of grievances.
At the hearing on the application for a preliminary injunction, certain facts were stipulated between the parties which may be summarized as follows:
On December 4, 1980, the East Baton Rouge Parish School Board adopted new "Rules of Procedure" which became effective January 5, 1981. On January 5, 1981, the school board met at the Instructional Resource Center of the school board, a publicly-owned building. The principal purpose of the meeting was to discuss, deliberate and take official action toward adopting a proposed plan for desegregating the public schools in the parish. Mrs. Godwin attended the meeting as a member of the public and sat at the rear of the meeting room with no one seated behind her. She carried a sign approximately 15 X 23 inches in size which she displayed by standing next to her chair and holding it above her head. The sign depicted a black and a white child and stated: "Desegregation can help people know one another better so they can work together better." At no time did Mrs. Godwin engage in any loud or boisterous conduct nor did her behavior threaten the orderly conduct of the meeting. She conducted herself in a quiet and orderly manner at all times. The school board president, George Richard, interrupted the agenda and requested Mrs. Godwin to remove the sign or herself from the meeting. He read her the rule prohibiting signs of which she was already aware. When she failed to comply, he recessed the meeting, left the bench or *1217 podium and approached Mrs. Godwin in the rear of the room where he again asked her to remove the sign or herself. Upon her refusal to do so, she was arrested for trespass and removed from the building by the police.
In addition to the above stipulation of facts, Mrs. Eileen Armstrong, immediate past-president and ten-year member of the board, testified that in past meetings, hand signs had created a problem by blocking the view of others at the meetings; by distracting the members of the school board from their deliberations; and by creating a potential safety hazard to others at the meetings. She also stated that Mrs. Godwin could have expressed the same sentiments on the sign at the microphone verbally or by submission of a written document. A written agenda is prepared for each regular school board meeting. Rules permit a person to speak for five minutes on any subject on the agenda. Discussion of a subject not on the agenda requires the vote of two-thirds of the board. Mr. Richard, president and six-year member of the board, also testified that signs had been disruptive of the meetings in the past. Both he and Mrs. Armstrong stated that past disruptions had led to the promulgation of Rule VII.
Communication by signs, placards, or posters is closely akin to "pure speech" and is entitled to comprehensive protection under the first amendment. See Tinker v. Des Moines Independent School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The first amendment, however, does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired. Heffron v. International Society for Krishna Consciousness, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).[5] Thus, Mrs. Godwin's display of a hand-carried sign, like other forms of expression protected by the first amendment, is subject to reasonable time, place and manner restrictions. As stated by the United States Supreme Court in Heffron, supra, 101 S.Ct. at 2564:
We have often approved restrictions of that kind provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in doing so they leave open ample alternative channels for communication of the information.
The issue here then is whether Rule VII is a permissible restriction on the place and manner of communicating the views of citizens attending school board meetings, more specifically, whether the school board may exclude from its meetings all hand-carried signs.
A major criterion for a valid time, place and manner restriction is that the restriction "may not be based upon either the content or subject matter of the speech." Heffron, supra. Rule VII qualifies in this respect since it applies even-handedly to all who wish to bring hand-held signs into school board meetings. No sign, placard or poster which is carried by hand is permitted in the school board office building or any of its rooms.
Moreover, since all hand-carried signs are forbidden by the rule, no discretion is vested in the school board to permit some hand signs while not allowing others. Hence, *1218 Rule VII is not open to the kind of arbitrary application that has been condemned as inherently inconsistent with a valid time, place and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view. Heffron, supra, and cases cited therein.
A valid time, place and manner restriction must also "serve a significant governmental interest." Heffron, supra. Here, the principal justification asserted by the school board in support of Rule VII is the need to ensure that its meetings are conducted in an orderly and dignified manner.[6]
School board meetings are held in a room of the school board office building. A written agenda is prepared for each school board meeting. Rules permit a person to speak for five minutes on any subject on the agenda. Discussion of a subject not on the agenda requires the vote of two-thirds of the board. The purpose of school board meetings is to allow the duly elected representatives of the people to consider and act upon matters of importance to the operation of the school system. It is in the best interests of the citizens of East Baton Rouge Parish that such meetings be conducted in an orderly and expeditious manner permitting full presentation of information and viewpoints by interested citizens. Any individual, group or organization may orally address the board on an agenda item for a period not to exceed five minutes or submit a written presentation of his, her or their views. It is apparent that the board's interest in conducting its meetings in an orderly and dignified manner is a substantial consideration and a valid governmental objective.
In addition, consideration of a forum's special attributes is relevant to the constitutionality of a regulation since the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved. Heffron, supra. For example, there are significant differences between city streets (which have "immemorially been held in trust for the use of the public and, ... have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions," Hague v. C.I.O., 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939)) and school board meetings. As stated in Heffron: "A street is continually open, often uncongested, and constitutes not only a necessary conduit in the daily affairs of a locality's citizens, but also a place where people may enjoy the open air or the company of friends and neighbors in a relaxed environment." On the other hand, a school board meeting, as described above, is a weekly event attracting great numbers of citizens who come to view the meeting and/or express their opinions on items listed on the agenda for that meeting. The demand for decorum is much more compelling in the context of a school board meeting.
Given these considerations, we find that the school board's interest in excluding all hand-carried signs from its meetings is sufficient to satisfy the requirement that a place or manner restriction must serve a substantial governmental interest.
Finally, we conclude that the restriction imposed by Rule VII leaves open ample alternative channels for communication of the information. The rule does not prevent Mrs. Godwin from carrying her sign anywhere outside the school building and its rooms. More importantly, the rule does not deny access within the forum in question. Mrs. Godwin may attend the school board meeting and communicate her ideas within the forum by expressing her views orally on an agenda item for a period of five minutes or by submitting a written document setting forth her views. The school board *1219 meeting is a limited public forum in that it exists to provide a means for a great number of citizens to present their views on school board agenda items in an efficient and orderly fashion. Considering the limited function of the school board meeting and the area in which it operates, we consider that there are ample alternative channels for communication of the information.
In sum, we conclude that Rule VII is neither unconstitutional on its face nor as applied to plaintiff. It is a permissive restriction on the place and manner of communicating views of citizens attending school board meetings.[7] Accordingly, we affirm the judgments of the courts below.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
DIXON, C. J., dissents with reasons.
CALOGERO, J., dissents for reasons assigned by DIXON, C. J.
DENNIS, J., dissents for reasons assigned by DIXON, C. J.
LEMMON, J., concurs and assigns reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The law seems simple enough.
"No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom." Art. 1, Section 7, La.Const. 1974.
Sometimes the breach of a clear provision of law is justified by necessity. Absolutely no necessity for the abridgment of Fannie Godwin's freedom of speech (words on posters are a form of speech) has been or can be shown; nor has she abused that right.
The majority has ignored this clear, unanswerable, applicable provision of the Louisiana Constitution.
LEMMON, Justice, concurring.
The prohibitory rule could have been more narrowly circumscribed.[1] But when competing interests are balanced in determining constitutionality, the rule limiting freedom of expression for a legitimate governmental interest must only be drawn reasonably, not perfectly. The fact that a more nearly perfect rule might have been adopted does not render unconstitutional the rule that was adopted, as long as that rule provides a reasonable balance between the competing interests.
The courts should not require modification of this reasonable rule simply because the rule is susceptible of further refinement, in the absence of an unnecessary and significant limitation on freedom of expression. When other available methods of expression are considered, this rule is not unconstitutionally restrictive as to the time, place and manner in which visitors in the office building may express themselves.[2]
NOTES
[1] Rule VII of the Rules of Procedure of the East Baton Rouge Parish School Board provides:

ORDER AND DECORUM AT SCHOOL BOARD AND COMMITTEE MEETINGS.
It is in the public interest, and the public demands, that meetings of the School Board or its Committees, in handling the public's business, be conducted in an orderly and dignified manner. To this end, the following rules are established for the conduct of all persons, including Board members and staff members, attending a meeting of the School Board or its Committees.
No signs, poster, placards, etc. shall be affixed to the walls, doors, etc. of the School Board office building or any room therein, except by the School Board staff in connection with School Board business and then only with permission of the Superintendent. No sign, placard, or poster which is carried by hand shall be permitted in the School Board office building or any of its rooms. All persons attending meetings of the School Board or of its Committees must be recognized by the presiding officer before speaking. In return, the presiding officer and other Board members shall courteously receive the comments made by such persons.
Any person who fails or refuses to obey the rulings and directions of the presiding officer, or otherwise disrupts the meeting in any manner, shall be requested by the presiding officer to leave the meeting room for the remainder of that meeting.
If any person refuses to follow the directions of the presiding officer, the presiding officer shall cause such person to be removed from the meeting as authorized by L.R.S. 42:6.1(C) and other applicable laws of the State of Louisiana.
[2] U.S.Const. amend. I, as applied to the states through the fourteenth amendment, provides that: "Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." La.Const. art. 1, § 7 provides that: "No law shall curtail or restrain the freedom of speech ...." La.Const. art. 1, § 9 provides: "No law shall impair the right of any person to assemble peaceably or to petition government for a redress of grievances."
[3] 403 So.2d 72 (La.App. 1st Cir. 1981).
[4] 404 So.2d 1238 (La.1981).
[5] Heffron involved a Minnesota state fair rule requiring organizations desiring to distribute and sell religious literature and to solicit donations to conduct those activities only at an assigned location within the fairgrounds. The asserted governmental interest was the need to maintain the orderly movement of the crowd given the large number of exhibitors and persons attending the fair. The United States Supreme Court found that the restriction was not based upon either the content or subject matter of the speech, it was not open to arbitrary application, it served a substantial state interest, it was not an unnecessary regulation because less restrictive means would not adequately deal with the problem and alternative forums for the expression of the protected speech existed despite the effects of the rule. Accordingly, the Minnesota State Fair Rule was upheld as a valid place and manner restriction. Four Justices concurred in part and dissented in part. These Justices agreed with the majority insofar as it upheld the rule's restriction on sales and solicitations. They dissented, however, from the majority's approval of the rule's restriction on the distribution of literature.
[6] In addition, the school board asserted the following interests: (1) safety of persons in the audience; (2) the right of all persons present to be able to observe the deliberations of the school board; and (3) the need to curb the distracting and disruptive exhibition and waving of signs during the course of the meeting.
[7] In view of this finding, plaintiff's contention that Rule VII is unconstitutionally overbroad has no merit. Likewise, plaintiff's contention that Rule VII violates La.Const. art. 12, § 3 and Louisiana's Open Meeting Law, La.R.S. 42:4.1 et seq., is also without merit.
[1] For example, the rule could have allowed those hand held signs which are of a certain size, which are held against the wall in the rear, which are not waved, etc.
[2] Visitors may hang signs around their necks, wear signs on clothing, wear arm bands or use other forms of communication other than hand held signs. All persons are allowed to address the Board for limited periods as to agenda items, and plaintiff had done so many times.