LISELI OLIVA

VERSUS

NICOLE TIARA JONES

C/W

NICOLE T. JONES, CAMS

VERSUS

LISELI OLIVA CHAVEZ

NO. 22-CA-385  C/W
22-CA-386

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 826-677 C/W 826-416, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

March 29, 2023

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and Stephen J. Windhorst

**AFFIRMED**
    **SMC**
    **MEJ**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

PLAINTIFF/APPELLEE,
LISELI OLIVA
 In Proper Person

DEFENDANT/APPELLANT,
NICOLE TIARA JONES, CAMS
 In Proper Person

**CHEHARDY, C.J.**

Appellant, Nicole T. Jones Cams ("Jones"), challenges the trial court's April 13, 2022 judgment, which issued a permanent order of protection from stalking against her in favor of appellee, Liseli Oliva Chavez ("Oliva"), on grounds that (1) the order of protection is vague and impinges upon her constitutional right to free speech protected by the First Amendment to the United States Constitution and Article I, § 7 of the Louisiana Constitution, and (2) Oliva failed to present evidence sufficient to show that an order of protection against Jones was warranted. For the reasons set forth more fully below, finding no abuse of discretion by the trial court or violation of Jones' constitutional right to free speech, we affirm the trial court's judgment.

**PROCEDURAL HISTORY**

On March 24, 2022, appellant, Jones, filed a petition for protection pursuant to La. R.S. 46:2171, *et seq.*, known as the "Protection from Stalking Act.," against appellee, Oliva, in the Twenty-Fourth Judicial District Court, Parish of Jefferson, Case No. 826-416, which was allotted to Judge June B. Darensburg, Division C. One week later, on March 31, 2022, Oliva filed a similar petition for protection from stalking against Jones on her own behalf, and on behalf of her minor child, A.K., and Richard Kelly ("Kelly"), the father of the minor child and then boyfriend of Oliva. On April 6, 2022, Case No. 826-677, Oliva's petition for protection, was transferred to Division C, and was consolidated with Case No. 826, 416, Jones' petition for protection.

In her petition, Oliva alleged that on January 13, 2021, Jones visited Kelly's home and became irate when she realized that Oliva was living there, and from that date forward, Jones began harassing, stalking and cyberstalking her. The petition further alleged that Jones not only sent private messages to harass Oliva through social media and left messages on her social media platforms, Jones also created

fake profiles using false photographs and sent messages to her through the fake accounts. Oliva's petition alleged that Jones researched Oliva's personal divorce records and sent threatening letters to her home. Additionally, Oliva's petition alleged that Jones was posting on her own personal blog, public platforms, and tiktok accounts, personal information concerning Oliva and Kelly's private relationship. Lastly, Oliva's petition alleged that Jones stalked her at Planet Fitness in Metairie, Louisiana, and at Target, also in Metairie, necessitating police intervention.

On March 31, 2022, the trial court issued a Uniform Abuse Protection Order – temporary restraining order, effective through April 13, 2022, prohibiting Jones from abusing, harassing, assaulting, stalking, following, tracking, monitoring, or threatening Oliva, her minor child, A.K, and Richard Kelly, in any manner. In addition, the TRO ordered Jones not to contact Oliva, A.K., or Kelly, personally, through a third party, or via public posting, by any means, including written, telephone, or electronic (text, email, messaging, or social media) communication without the express written permission of the court. Among other things, the TRO also ordered Jones not to come within 100 yards of Oliva, A.K., or Kelly, or within 100 yards of their residence, apartment complex, or multiple family dwelling. The TRO further ordered Jones not to contact any family members or acquaintances of Oliva, A.K., or Kelly, and set an April 13, 2022 hearing date for Jones to show cause why, among other things, she should not be ordered to "remove her blog and social media which identifies [Oliva] and [Kelly]."[1]

---

[1] On March 24, 2022, in response to the petition for protection against stalking filed by Jones against Oliva, the trial court issued a similar Uniform Abuse Protection Order – Temporary Restraining Order prohibiting Oliva from, among other things, stalking, harassing, or threatening Jones in any manner, and that Oliva not come within 100 feet of Jones or her residence. The order also ordered Oliva to stay away from Jones at the Planet Fitness located on Labarre Road in Metairie, Louisiana, and from contacting any family members or acquaintances of Jones.

On April 13, 2022, Jones and Oliva appeared before the trial court, both in proper person, for a contradictory hearing on the respective petitions for protection from stalking filed by the parties. At the close of the hearing, the trial court granted both parties' respective petitions for protection and entered mutual permanent orders of protection—one in favor of Jones against Oliva, and the other in favor of Oliva and the minor child, A.K., against Jones—stating:

> Both parties shall not reference the other party and/or protected persons in their social media blogs and/or webistes [sic]. All current references shall be removed within 30 days of this judgment.

Prior to signing the respective orders, and having Jones and Oliva each review and sign the orders, the trial court stated:

> All right, Ladies, I'm going to review these very quickly; and then I'm going to give these to you to take a look at and to sign off on. … I'm going to give these to each of you, Ladies, before I spend time signing anything; this one on this side and this one to [Jones] in this side. … If you'll read through it, if there's anything we may have missed, anything we have incorrect, take a look at it. **And if you're comfortable with it, there is a page where you sign off.** [Emphasis supplied.]

After she reviewed the proposed orders of protection, Jones stated:

> **Everything looks good.** [Emphasis supplied.]

Accordingly, the trial court, Jones, and Oliva each signed the mutual protective orders.

This appeal filed by Jones, in proper person, followed.[2]

## FACTUAL BACKGROUND

According to Jones, she was in a four-year relationship with Richard Kelly, and he fraudulently led her to believe that their relationship was monogamous. The relationship ended contentiously when Jones discovered that Kelly was

---

[2] Oliva did not appeal the protective order granted in favor of Jones against her.

simultaneously in an intimate relationship with Oliva, and was the father of Oliva's three-year-old child.[3]

Jones claims that, as a matter of self-help to cope and heal from Kelly's devastating betrayal and deception, and with the intention of helping other women involved in similar situations, she created a public blog, entitled "Intuitively Challenged." Jones contends that the "purpose and substance" of the blog was to share her experiences, not only regarding her involvement with Kelly, but also in other relationships. She avers that the blog talks about what it feels like to endure narcissistic abuse, how one can heal from it, and provides resources for people who visit the blog who are looking for help. Jones contends that the blog is not a gossip forum; it is a self-help blog that provides resources for people who may be suicidal, and a blog where people can find refuge. Additionally, Jones believes the blog's growing success is due to a combination of the fact that she had a past toxic relationship, which was the source of her problems, and that she publicly shares her experiences with people who can relate.

Jones denies that her blog ever mentioned by name, or used any identifiers of, either Kelly or Oliva. She contends that she was very careful not to use any language that would allow a reader of the blog, who did not have personal knowledge of Jones' personal life, to know the subject of any of the situations described in her blog. Further, Jones claims that she monitored any comments made by others to make sure that no language used would identify the subject of any of the situations she described or those described by others sharing their own situations on her blog. While claiming that Oliva continuously stalked and

---

[3] It appears from the record that Jones and Oliva, who, at the time, was married to Carlos Chavez, were impregnated by Kelly around the same time. Kelly allegedly encouraged both women to end their pregnancies; Jones did, but Oliva did not, resulting in the birth of a daughter while she was still married to Chavez.

harassed her,[4] Jones denies that she ever stalked or cyberstalked Oliva or Kelly, and contends that the incidents occurring at Planet Fitness and Target were initiated by Oliva. Additionally, she contends that, on both occasions, the Jefferson Parish Sheriff's Office concluded that no crime had been committed by Jones and, thus, no arrests or citations were issued.[5]

After reviewing the information contained in the records from both Jones' petition for protection filed against Oliva, and in Oliva's petition for protection filed against Jones, as well as the parties' presentations to the court at the contradictory hearing, the trial court found that neither party "had clean hands," and that the issuance of mutual permanent protective orders was supported by the record. Consequently, the trial court rendered judgment granting both Jones and Oliva's respective petitions for protection, and issued mutual permanent orders of protection as discussed above.

**ISSUES PRESENTED FOR APPELLATE REVIEW**

Jones raises two issues for this Court's appellate review: (1) whether the trial court abused its discretion in issuing a permanent order of protection in favor of Oliva against Jones, when Oliva failed to present evidence to substantiate a claim for stalking; and (2) whether the permanent order of protection impinges upon Jones' constitutional right of free speech protected by the First Amendment to the United States Constitution and Article 1, § 7 of the Louisiana Constitution.

---

[4] In her petition for protection, Jones sought to prevent Oliva, personally or through third parties, "from leaving derogatory, threatening, and defamatory comments on her blog."

[5] On March 23, 2022, both Jones and Oliva were apparently working out at Planet Fitness in the same workout room. According to Oliva, initially Jones was simply standing and staring at her, and then approached Oliva and asked a question. Oliva initiated a 9-1-1 service call alleging a disturbance at Planet Fitness. When officers arrived, Oliva relayed that she had "previous problems inside the business (Planet Fitness) with [Jones]," and claimed that Jones was stalking her. On April 8, 2022, Oliva contacted the Jefferson Parish Sheriff's Department alleging that Jones was stalking her at Target. Jones denied the allegation and stated that they "just happened" to be at the same Target store at the same time.

**STANDARD OF REVIEW**

An appellate court reviews orders of protection against abuse for an abuse of discretion. *Larremore v. Larremore*, 52,879 (La. App. 2 Cir. 9/25/19), 280 So.3d 1282, 1289. Much discretion is vested in the trial judge, particularly in evaluating the weight of the evidence which is to be resolved primarily on the basis of the credibility of the witnesses. *Id.* In matters of credibility, an appellate court must give great deference to the findings of the trier-of-fact. *Id.* The trial court sitting as the trier of fact is in the best position to evaluate the demeanor of the witnesses, and its credibility determinations will not be disturbed on appeal absent manifest error. *Ruiz v. Ruiz*, 05-175 (La. App. 5 Cir. 7/26/05), 910 So.2d 443, 445. When a conflict in the testimony exists, reasonable evaluations of credibility and reasonable inferences of fact made by the trial court are not to be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are just as reasonable. *Shaw v. Young*, 15-974 (La. App. 4 Cir. 8/17/16), 199 So.3d 1180, 1183. To reverse a fact-finder's determination in an action seeking a protection from abuse order, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Lepine v. Lepine*, (La. App. 5 Cir. 5/15/17), 223 So.3d 666. Whether to grant a protective order, and the extent of protection, are within the discretion of the trial court, and an appellate court will not ordinarily modify or reverse a trial court in such matters absent an abuse of the trial court's discretion. *Palowsky v. Campbell*, 21-279 (La. App. 5 Cir. 8/26/21), 327 So.3d 589, 595, *writ denied*, 21-1428 (La. 11/23/21), 328 So.3d 74.

**DISCUSSION**

*Sufficiency of the Evidence*

On appeal, Jones argues the trial court abused its discretion in granting Oliva's petition for protection because Oliva failed to present any evidence at the hearing to support a claim for stalking or cyberstalking by Jones, and, accordingly, the protective order should be quashed. We disagree.

Oliva petitioned the trial court for an order of protection from stalking pursuant to La. R.S. 46:2171, et *seq.*, known as the "Protection from Stalking Act." Under this Act, "stalking" means any act that would constitute the crime of stalking under La. R.S. 14:40.2 or cyberstalking under La. R.S. 14:40.3. *See* La. R.S. 46:2172; *Head v. Robichaux*, 18-366 (La. App. 1 Cir. 11/2/18), 265 So.3d 813, 816. A victim of stalking by a perpetrator who is a stranger to or acquaintance of the victim shall be eligible to receive all services, benefits, and other forms of assistance provided by Chapter 28 of Title 46, which is the "Protection from Family Violence Act" and includes specific statutes on "Domestic Abuse Assistance," provided the services, benefits, and other forms of assistance are applicable based on the status of the relationship between the victim and the perpetrator. *See* La. R.S. 46:2173.[6]

Under the "Domestic Abuse Assistance" law, La. R.S. 46:2131, *et seq.*, to obtain a protective order, the petitioner must prove his or her allegations of domestic abuse by a preponderance of the evidence. La. R.S. 46:2135(B). Proof is sufficient to constitute a preponderance of the evidence when the entirety of the evidence, both direct and circumstantial, shows that the fact sought to be proved is

---

[6]    Louisiana courts have recognized that stalking (La. R.S. 14:40.2) and cyberstalking (La. 14:40.3) fall under the category of nonphysical offenses against the person included in the definition of physical abuse. *S.M. v. T.M.*, 19-369 (La. App. 5 Cir. 12/26/19), 289 So.3d 141, 147.

more probable than not. *Hanks v. Entergy Corp.*, 06-477 (La. 12/18/06), 944 So.2d 564, 578.

The crime of stalking is "the intentional and repeated following or harassing of another that would cause a reasonable person to feel alarmed or to suffer distress." La. R.S. 14.40.2(A). The term "harassing" is defined as "the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures." La. R.S. 14:40.2(C)(1). A "pattern of conduct" means "a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person." La. R.S. 14:40.2(C)(2).

Another "offense against the person" found in the Louisiana Criminal Code is the crime of cyberstalking, set forth in La. R.S. 14:40.3, states, in pertinent part:

> (B) Cyber stalking is action of any person to accomplish any of the following: …
>      ***
> (2) Electronically mail or electronically communicate to another repeatedly, whether or not conversation ensues, for the purpose of threatening, terrifying or harassing any person.

La. R.S. 14:40.3.

The cyberstalking statute defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature, transmitted in whole or in part by wire, radio, computer, electromagnetic, photoelectric, or photo-optical system." La. R.S. 14:40.3(A)(1). The statute also defines "electronic mail" as the "transmission of information or communication by use of the internet, a computer, a facsimile machine, a pager, a cellular telephone, a video recorder, or other electronic means sent to a person identified by a unique address or address number and received by that person." La. R.S. 14:40.3(A)(2).

At the contradictory hearing, Oliva stated that Jones' harassment has occurred for over a year and that Jones "will not leave [her] alone." She averred that she had more than 60 pages of communications, including emails and direct contacts through her Facebook page, from Jones and Jones' family members to Oliva. Oliva contends that on Jones' public blog, which was created after Jones' separation from Kelly, Jones talks about Oliva and lets "everyone know all of [her] information." According to Oliva, while Jones does not refer to Oliva specifically by name in the blog, when writing about her experiences regarding her former relationship with Kelly, Jones refers to Oliva as the "new supply." Additionally, Oliva stated that Jones contacted her ex-husband, researched her marital records and the history of her Planet Fitness gym membership, visited her 10-year-old daughter's social media page, and had her daughters contact Oliva directly. Oliva further stated that, because of all of the distress created by Jones' continued harassment, Oliva has experienced two miscarriages since January 2021, when this debacle began.

At the close of the hearing, the trial court made the following factual findings:

> I don't think any party has a clean hand in any of this. I can understand some things that have occurred, that could make a person very angry. But when one of you enter [sic] a place, a proper thing to do is leave. ...
>
> ***
>
> Both of you posted something to inflame the situation, and it needs to stop; so everybody will remove any public media posts that's out there. Any blogs that refers to the other person, I order it removed.
>
> ***
>
> Because I've said, I don't think any party has clean hands in this; that both parties have done some things that have inflamed the other person. And it's better to have mutual stay away orders, protective orders against both of you and move on, Ladies. Move on with your life.
>
> ***
>
> And when I say do not refer to the other person in blogs, on websites, I mean I'm not just talking about stating their names. I mean even in an indirect way. Like this

lady did - - and we know what you're talking about. No. That is a violation of the protective order; so don't think you can get around it by stating something other than the person's name or someone else stating something other than the person's name.

*** 

… As far as Richard, [he is] fair game. And when I say game, he's not a part of this protective order is what I mean by that.

*** 

I'm going through the record, reading some things; and so that's why I say neither one of you had clean hands in this; so coming to pretend that, or even if you're responding to someone, you respond responsibly. You don't respond in a way that drags you into the same category as them.

Upon review, based on the totality of the record, we find no abuse of the trial court's discretion in finding that Jones' alleged communications through social media and otherwise constitute a "repeated pattern of verbal communications or nonverbal behavior without invitation" that would cause a reasonable person to suffer emotional distress under the circumstances. As with the stalking statute, the harassing e-mails and text messages to Oliva from Jones would constitute cyberstalking. For these reasons, we find no merit to this assignment of error, and affirm the trial court's judgment granting a permanent protective order against Jones and in favor of Oliva.

### *The Order of Protection does not violate Jones' First Amendment rights to free speech.*

In this assignment of error, Jones focuses solely on the following language set forth in the mutual protective orders:

> Both parties shall not reference the other party and/or protected persons in their social media blogs and/or webistes [sic]. All current references shall be removed within 30 days of this judgment.

Despite having reviewed the specific language and having represented to the trial court that "[e]verything looks good" prior to signing the order, Jones argues that this language places an impermissible restriction on her First Amendment right

to free speech under both the United States Constitution and the Louisiana State Constitution. Specifically, Jones asserts that, insofar as the order of protection establishes that she must limit what she says in her public blog, this is a clear violation of her right to freedom of speech protected by La. Const. art. I, § 7, and that, if she wanted to, Jones could use Oliva's actual name or any identifiers. According to Jones, as long as she is not advocating violence or lawlessness against Oliva, the trial court "cannot, in any way, limit her freedom of speech." Jones further argues that the order is unconstitutionally vague as it does not define what is meant by "reference." We disagree.

The right to free speech is guaranteed in the constitutions of both the United States and Louisiana. The First Amendment to the United States Constitution provides, in pertinent part:

> Congress shall make no law … abridging the freedom of speech, or of the press[.]

The Louisiana Constitution Art. 1, § 7, states:

> No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom.

Louisiana's interest in protecting the reputations of private individuals is clearly expressed and preserved in our constitution, which has expressly balanced the right of free speech with the responsibility for abuse of that right. *See Kennedy v. Sheriff of E. Baton Rouge*, 05-1418 (La. 7/10/06), 935 So.2d 669.

The First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired. *Godwin v. East Baton Rouge Parish School Bd.*, 408 So.2d 1214, 1217 (La. 1981). Moreover, the United States Supreme Court has held that not all speech is of equal First Amendment importance. It is speech on matters of *public* concern that is at the heart of the First Amendment's protection. *Dun & Bradstreet, Inc. v. Greenmoss*

*Builders, Inc.*, 472 U.S. 749, 758-59, 105 S.Ct. 2939, 2944-45, 86 L.Ed.2d 593, (1985); *Wainwright v. Tyler*, 52,083 (La. App. 2 Cir. 6/27/18), 253 So.3d 203, 214. Matters of public concern relate to any matter of political, social, or other concern to the community. *Connick v. Myers*, 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). Whether speech addresses matters of public concern must be determined by the content, form, and context of a given statement, as revealed by the entire record. *See Yount v. Handshoe*, 14-919 (La. App. 5 Cir. 5/28/15), 171 So.3d 381, 385. Abuses of the right to free speech are actionable under Louisiana law, particularly when the speech tends to harm the reputation of another so as to lower the person in the estimation of the community or to deter others from associating or dealing with the person or otherwise exposes the person to contempt or ridicule. *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129, 139-40; *see also Trentecosta v. Beck*, 96-2388 (La. 1-/21/97), 703 So.2d 552, 559.

Here, it appears that the references to Oliva on Jones' public blog, albeit indirect, have nothing to do with any discussions involving matters of "public concern." In fact, Jones expressly stated that her blog was initiated as a matter of "self-help" to personally cope and heal from Kelly's devastating betrayal and deception in their private relationship, and that the "purpose and substance" of the blog was to share her experiences involving her own personal relationships. Instead, taken in their proper context, the indirect references to Oliva on Jones' blog appear to be nothing more than personal attacks on Oliva's character and a smear campaign to impugn Oliva's reputation—speech which is *not* protected by the First Amendment. While we commend Jones for her efforts to assist other persons that are struggling in and/or attempting to heal from toxic relationships, we can conceive of no reason, other than to harass, harm Oliva's reputation, or expose her to contempt or ridicule, for Jones, either individually or through a third party, to mention or make reference to Oliva, directly or indirectly, in her public blog.

We find that Jones has failed to show that the order of protection in this case violates her constitutional right to free speech or that the order of protection is vague or unduly restrictive. The trial judge made it very clear to the parties what she meant by "referencing" the other in their respective blogs. The order does not prohibit Jones from sharing on her blog about her unfortunate experiences with Kelly, and the hard lessons she has learned from that relationship and/or other relationships. The order, however, does prohibit Jones, in discussing her misfortune with Kelly, from mentioning anything that references Oliva in any way.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MARCH 29, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 22-CA-385
### C/W 22-CA-386

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
NO ATTORNEY(S) WERE ENOTIFIED

**MAILED**
LISELI OLIVA  (APPELLEE)
137 12TH STREET
BRIDGE CITY, LA 70094

NICOLE T. JONES  (APPELLANT)
2656 PRESSBURG STREET
NEW ORLEANS, LA 70122